**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

UNITED STATES OF AMERICA

    Plaintiff,

    v.

MEDSTAR HEALTH, INC.
10980 Grantchester Way
Columbia, MD 21044

    Defendant.

Civil Action No.:

Demand for Jury Trial

## COMPLAINT

THE UNITED STATES OF AMERICA respectfully alleges the following:

### INTRODUCTION

1.    This action is brought by the United States to enforce Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12181-89, as amended, and its implementing regulation, 28 C.F.R. pt. 36, against Defendant MedStar Health, Inc. ("Defendant" or "MedStar Health").  The ADA prohibits discrimination on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation by any private entity that owns, leases (or leases to), or operates a place of public accommodation.  42 U.S.C. § 12182(a); 28 C.F.R. § 36.201(a).

2.    According to its website (https://perma.cc/9DZ5-ZT2C) (last visited Dec. 14, 2023), MedStar Health is the largest healthcare provider in Maryland and the Washington, D.C., region, with 10 hospitals and over 300 total care locations (including urgent care clinics, ambulatory care centers, and primary and specialty care providers).

3. Beginning in March 2020, the COVID-19 pandemic caused MedStar Health (like other healthcare providers across the nation) to institute infection control measures that included limiting the flow of individuals into its physical locations. However, at times contrary even to its own written policies, MedStar Health also excluded support persons for persons with disabilities (including a family member, companion, aide, or other person familiar with the patient who is authorized to assist the patient in making decisions) whose presence and/or other participation was necessary for the persons' equal access to care ("Support Persons"). This occurred repeatedly, across various MedStar Health locations, in calendar years 2020, 2021, and 2022. This practice discriminated against numerous individuals on the basis of disability, in violation of the ADA.

4. The Attorney General has commenced this action based on reasonable cause to believe that Defendant has engaged in a pattern or practice of discrimination and reasonable cause to believe that a person or group of persons has been discriminated against and that such discrimination raises an issue of general public importance. 42 U.S.C. § 12188(b)(1)(B). The United States seeks declaratory and injunctive relief and compensatory damages against Defendant.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this action under 42 U.S.C. § 12188(b)(1)(B) and 28 U.S.C. §§ 1331 and 1345.

6. The Court may grant declaratory relief and further necessary or proper relief pursuant to 28 U.S.C. §§ 2201 and 2202 and may grant equitable relief and monetary damages pursuant to 42 U.S.C. § 12188(b)(2).

7. Venue is proper in this district pursuant to 28 U.S.C. § 1391, because it is where

Defendant resides and also where a substantial part of the events or omissions giving rise to the claim occurred.

## PARTIES

8. Plaintiff is the United States of America.

9. MedStar Health is a not-for-profit, tax-exempt healthcare system headquartered in Columbia, Maryland.  MedStar Health's hospitals and other care facilities affect commerce and are places of public accommodation.  42 U.S.C. § 12181(7)(F); 28 C.F.R. § 36.104.

## ALLEGATIONS

10. Best practices for controlling the spread of COVID-19 included limiting the flow of individuals into healthcare settings.  *See, e.g.,* https://perma.cc/NHJ3-J8UT (last visited Dec. 14, 2023).  However, national health authorities explicitly recognized that any limitations on "visitors" in healthcare facilities should not apply to "those essential for the patient's physical or emotional well-being and care."  *Id.*

11. Since the start of the COVID-19 pandemic in March 2020, MedStar Health has instituted and changed its policies regarding the entry of non-patients to its locations ("Visitor Policies").  As a matter of written policy and/or practice, MedStar Health has repeatedly excluded Support Persons for individuals with disabilities from its locations.

12. In mid-September 2020, MedStar Health posted on its webpage a policy entitled "Temporary Visitor Restrictions and Guidance During COVID-19."  This Visitor Policy limited the entry of "visitors."  Nevertheless, in a section entitled "General Guidance," it stated: "All patients with disabilities may designate one guardian/caretaker to accompany them throughout all care settings."  Under the "Specific Guidance" for Emergency Department settings, it stated: "No visitors" (though allowing that "One parent/guardian may accompany children under 18

3

years of age").

13. By late October 2020, the Visitor Policy for Emergency Department settings stated that it allowed exceptions to the "no visitors" policy in the following circumstances: "children, disability, having surgery, end of life."

14. During times of significant community spread of COVID-19, MedStar Health locations went under "Code Red" or "lockdown" status. At these times, despite written policies allowing otherwise, MedStar Health denied entry to Support Persons.

15. At various times in calendar years 2020, 2021, and 2022, regardless of written policies purporting to allow Support Persons, and regardless of whether MedStar Health locations were on "lockdown" status, Support Persons have been excluded from various MedStar Health locations.

16. Examples of incidents involving MedStar Health's exclusion of Support Persons include, but are not limited to, the following:

    a. Person A, a woman with Alzheimer's Disease resulting in dementia who is a survivor of sexual assault, was accompanied by her adult child to a MedStar Health Hospital Emergency Department for urgent treatment of a pelvic floor disorder. Person A's adult child was prevented from physically entering the Emergency Department due to MedStar Health's Visitor Policies. Person A's adult child was also excluded during Person A's visit from providing information to MedStar Health staff regarding the reasons why care was being sought, relevant medical history, and/or how the trauma history might impact care. The adult child also attempted to communicate remotely with hospital staff regarding the course of care being provided, discharge instructions, and post-discharge care,

4

but hospital staff would not do so (including, at one point, being instructed during a telephone call to solicit that information from Person A).

b. Person B, a young woman with autism spectrum disorder (ASD) and an anxiety disorder, sought care at a MedStar Health Hospital Emergency Department at the direction of the doctor who had performed an outpatient procedure on her earlier in the day. Person B's development of post-procedure fever and pain could have been a life-threatening condition requiring emergency surgery. Despite multiple requests based on disability from both Person B and her parent, the parent was not allowed to accompany Person B during triage. While alone with MedStar Health staff, Person B experienced a panic attack and was not able to assess the impact of a delay in the hospital's ability to provide a necessary diagnostic scan. When that scan had not occurred after over two hours, the parent took her daughter, who was highly distressed by these events, to a non-MedStar Health hospital where they remained together and where emergency care was provided.

c. Person C, a man with an intellectual and developmental disability (IDD), sought care at a MedStar Health Hospital Emergency Department. He was not able to accurately recount details such as name, date of birth, and medical history. Person C relied on the presence of his parent at all medical encounters. Person C's parent, with whom Person C lived and who serves as Person C's sole caregiver, had called ahead and been assured that the two would be allowed to stay together during care. However, MedStar Health personnel refused to allow the parent to accompany Person C upon arrival to the Emergency Department. The two departed the MedStar Health facility. The next day, Person C's parent

contacted MedStar Health administration, who agreed the parent's presence was necessary. Person C and his parent returned to the Emergency Department the following day and Person C received care, remaining together.

17. Persons A, B, and C, and numerous other individuals aggrieved by MedStar Health's exclusion of Support Persons, meet the ADA's definition of disability. 42 U.S.C. § 12102; 28 C.F.R. § 36.105 (specifically recognizing neurological conditions and mental or psychological disorders as "physical or mental impairments" that, if they substantially limit one or more major life activities of an individual, qualify the individual as "disabled" under the ADA).

18. The incidents described in the immediately preceding paragraph resulted in unequal access to healthcare for Persons A, B, and C.

19. MedStar Health has apologized privately and/or publicly to Persons A, B, and C and/or their intended Support Persons and to individuals involved in numerous other similar incidents where MedStar Health excluded Support Persons. In various apologies, MedStar Health has repeated that Support Persons should have been allowed at MedStar Health facilities, and that further training would be provided to staff on this issue.

20. Nevertheless, MedStar Health excluded many additional Support Persons in calendar years 2020, 2021, and 2022.

21. MedStar Health's exclusion of Support Persons has resulted in unlawful discrimination. It has jeopardized the health of patients or prospective MedStar Health patients with disabilities.

## CAUSE OF ACTION
### Violations of Title III of the Americans with Disabilities Act
### 42 U.S.C. §§ 12181-89

22. The foregoing paragraphs are incorporated herein.

23. MedStar Health has discriminated against individuals on the basis of disability by failing to provide full and equal enjoyment of its goods, services, facilities, privileges, advantages, or accommodations in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12182-89 and its implementing regulation at 28 C.F.R. pt. 36, including by:

   a. denying individuals with disabilities the opportunity to participate in and benefit from the goods, services, facilities, privileges, advantages, and accommodations it provides.  42 U.S.C. § 12182(b)(1)(A)(i); 28 C.F.R. § 36.202(a);

   b. providing individuals with disabilities an unequal opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, and accommodations it provides.  42 U.S.C. § 12182(b)(1)(A)(ii); 28 C.F.R. § 36.202(b);

   c. failing to make reasonable modifications in its policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, in violation of 42 U.S.C. § 12182(b)(2)(A)(ii); 28 C.F.R. § 36.302(a).

24. MedStar Health's violations of the ADA amount to a pattern or practice of discrimination and, together with its discrimination against a person or group of persons, raise issues of general public importance.  42 U.S.C. § 12188(b)(1)(B).

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff United States prays that the Court:

A.  Grant judgment in favor of the United States and declare that MedStar Health has violated Title III of the ADA, 42 U.S.C. §§ 12181-89, and its implementing regulation, 28 C.F.R. pt. 36, by denying individuals with disabilities an equal opportunity to access and benefit from its goods, services, facilities, privileges, advantages, and accommodations;

B.  Enjoin MedStar Health, its officers, agents, employees, and all others in concert or participation with it, from engaging in discrimination against individuals with disabilities, and specifically from failing to comply with Title III of the ADA, 42 U.S.C. §§ 12181-89 and its implementing regulation, 28 C.F.R. pt. 36;

C.  Order MedStar Health to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities.  42 U.S.C. § 12182(b)(2)(A)(ii); 28 C.F.R. § 36.302(a)

D.  Order MedStar Health to revise its policies, practices, and procedures to bring its healthcare services into compliance with Title III of the ADA, 42 U.S.C. §§ 12181-89, and its implementing regulation, 28 C.F.R. pt. 36;

E.  Order MedStar Health to provide training on the ADA and on its revised policies, practices, and procedures to all MedStar Health-affiliated individuals who are responsible for determining when a Support Person may accompany a patient and/or who interface with the public at any of its facilities or otherwise on its behalf (including, but not limited to, officers, agents, employees, associates, contractors, and consultants).

F.  Award compensatory damages, including damages for pain, suffering, and emotional distress, to persons aggrieved by MedStar Health's actions, or failures to act, in violation of the ADA for injuries suffered as the result of MedStar Health's violations of Title III

of the ADA, 42 U.S.C. §§ 12181-89, and its implementing regulation, 28 C.F.R. pt. 36;

  G. Order MedStar Health to take all other necessary steps to comply with the ADA; and

  H. Award such other appropriate relief as justice may require, including the United States' costs and disbursements in this action.

## JURY DEMAND

Plaintiff the United States requests a trial by jury on all issues.

Respectfully submitted,

*/s/ Erek L. Barron*
EREK L. BARRON
United States Attorney

*/s/ Sarah Marquardt*
Sarah Marquardt  (No. 17429)
Assistant United States Attorney
District of Maryland
36 S. Charles Street, 4th Floor
Baltimore, MD 21201
Telephone:  410-209-4801
Email:  sarah.marquardt@usdoj.gov

*/s/ Kristen Clarke*
KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division

REBECCA B. BOND
Chief

*/s/ Anne E. Langford*
AMANDA MAISELS
Deputy Chief
ANNE E. LANGFORD
Trial Attorney
Disability Rights Section
Civil Rights Division
United States Department of Justice
4 Constitution Square
150 M Street, NE
Washington, DC  20530
Telephone: 202-616-2727
Email:  anne.langford@usdoj.gov

*Counsel for the United States of America*