## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| UNITED STATES OF AMERICA | |
| Plaintiff, | |
| v. | Civil Action No.: 1:24-cv-00302-JRR |
| MEDSTAR HEALTH, INC.<br>10980 Grantchester Way<br>Columbia, MD 21044 | |
| Defendant. | |

## <u>CONSENT DECREE</u>

## BACKGROUND

This matter is before the Court for entry of judgment by consent of the Plaintiff United

States of America (United States) and Defendant MedStar Health, Inc. (MedStar Health)

(collectively, the Parties) to resolve the above-captioned civil action.  The United States brought

this action to enforce Title III of the Americans with Disabilities Act (ADA), 42 U.S.C. §§

12181-89, as amended, and its implementing regulation, 28 C.F.R. pt. 36.  The United States'

Complaint alleges that, through application of its "visitor" restrictions in response to the COVID-

19 pandemic (Visitor Policies), MedStar Health at times excluded support persons for

individuals with certain disabilities (including a family member, companion, aide, or other

person familiar with the patient whose presence was necessary to help the patient in making

healthcare-related decisions).  The United States alleges that support persons were necessary to

assist individuals with certain disabilities with processing, comprehension, or communication

regarding medical issues in order for them to equally access medical care (Support Persons).[1]  As a result, the United States alleges that MedStar Health failed to provide full and equal enjoyment of its healthcare services to certain persons with disabilities and further alleges that MedStar Health's discriminatory actions constitute (i) a pattern or practice of discrimination and (ii) discrimination against a group of persons that raises an issue of general public importance. MedStar Health denies these allegations and denies that it has violated the ADA.  MedStar Health asserts that it has a longstanding practice of welcoming visitors and Support Persons for its millions of patients and that in the instances during the COVID-19 pandemic where the need for a Support Person was not timely identified or was erroneously denied, this was inconsistent with MedStar Health's policies and procedures.  MedStar Health represents that it is committed to accessibility and that before being contacted by the United States about this matter, it had taken steps to ensure Support Persons' presence in its facilities, consistent with its desire to provide the best care for all members of the community.

The Parties agree that it is in their best interests, and the United States believes that it is in the public interest, to voluntarily enter into this Consent Decree (Decree).  The Parties agree to the following provisions.  The Parties therefore agree and stipulate to the Court's entry of this Decree resolving the United States' Complaint against MedStar Health.

---

[1] However, this Decree does not require MedStar Health to allow all individuals with disabilities to be accompanied by a person of their choosing during their interactions with MedStar.  For instance, where an individual who is deaf can equally access medical care through MedStar's provision of a sign language interpreter or other auxiliary aids or services, or where an individual has a disability solely affecting mobility (that does not affect their ability to communicate or understand), these individuals would not be entitled to be accompanied by a Support Person, since they do not have a need for a Support Person as defined in this Decree.  Nothing in this Decree is intended to restrict MedStar's ability to provide appropriate auxiliary aids and services where necessary under the ADA.

Now it is hereby ORDERED, ADJUDGED, AND DECREED as follows:

## TITLE III COVERAGE

1.      Title III of the ADA and its implementing regulation prohibit discrimination on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation by any private entity that owns, leases (or leases to), or operates a place of public accommodation.  42 U.S.C. § 12182(a); 28 C.F.R. § 36.201(a).

2.      MedStar Health is a public accommodation within the meaning of Title III of the ADA.  42 U.S.C. §§ 12181(7)(F); 28 C.F.R. §§ 36.104.

3.      The United States alleges that individuals affected by MedStar Health's actions are persons with disabilities.  These individuals have physical or mental impairments (resulting from conditions including, but not limited to, mental health disabilities such as severe anxiety disorders, Alzheimer's disease, Autism Spectrum Disorder (ASD), intellectual and developmental disability (IDD), and/or traumatic brain injury (TBI)) that substantially limit one or more major life activities.  42 U.S.C. § 12102; 28 C.F.R. § 36.105.

4.      All individuals whose rights are being vindicated by this Decree are aggrieved persons pursuant to 42 U.S.C. § 12188(b)(2)(B).

5.      The Attorney General, who is responsible for enforcing Title III and its implementing regulation, is authorized to bring a civil action on behalf of the United States in federal court if the Attorney General has reasonable cause to believe that any person or group of persons is engaged in a pattern or practice of discrimination or any person with a disability or

group of persons with disabilities has been discriminated against and such discrimination raises an issue of general public importance.  42 U.S.C. § 12188(b)(1)(B).

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over this action under 42 U.S.C. § 12188(b)(1)(B) and 28 U.S.C. §§ 1331 and 1345.

7.      The Court may grant declaratory relief and further necessary or proper relief pursuant to 28 U.S.C. §§ 2201 and 2202 and may grant equitable relief and monetary damages pursuant to 42 U.S.C. § 12188(b)(2).

8.      Venue is proper in this district pursuant to 28 U.S.C. § 1391, because it is where Defendant resides and also where a substantial part of the events or omissions giving rise to the claim occurred.

## GENERAL NONDISCRIMINATION REQUIREMENTS

9.      As required by Title III of the ADA and its implementing regulation, MedStar Health:

    a.  Shall not discriminate on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations MedStar Health provides.  42 U.S.C. § 12182(a); 28 C.F.R. § 36.201;

    b.  Shall not deny individuals with disabilities the opportunity to participate in and benefit from the goods, services, facilities, privileges, advantages, and accommodations MedStar Health provides.  42 U.S.C. § 12182(b)(1)(A)(i); 28 C.F.R. § 36.202(a);

    c.  Shall not provide individuals with disabilities an unequal opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages,

and accommodations MedStar Health provides.  42 U.S.C. § 12182(b)(1)(A)(ii); 28 C.F.R. § 36.202(b);

    d.   Shall not fail to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless MedStar Health can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations.  42 U.S.C. § 12182(b)(2)(A)(ii); 28 C.F.R. § 36.302(a).

10.    Nothing in this Decree is intended to limit or deny MedStar Health the ability to raise any applicable affirmative defenses otherwise available to it under Title III of the ADA.

## ACTIONS TO BE TAKEN BY MEDSTAR HEALTH

11.    <u>Policies and Procedures</u>.  MedStar Health shall revise, to the extent necessary to conform with the language below, its already existing policies (to be applied in all hospitals and all other care locations that it operates):

    a.   <u>Public-Facing Policy</u>.  MedStar Health shall update its public-facing policy regarding Support Persons (Public-Facing Policy), available to and applicable to the public, to state that Support Persons may accompany patients with disabilities who require Support Person assistance in order to process relevant medical information, aid comprehension, and/or fully communicate in order to receive equal medical care from MedStar Health.  The Public-Facing Policy shall include illustrative examples of disabilities where a Support Person may be necessary, e.g., IDD, ASD, TBI, certain mental health disabilities (including severe anxiety

disorders), and conditions that have caused dementia. Within thirty (30) days of the Effective Date, MedStar Health will provide a draft Public-Facing Policy to the United States for review and approval, not to be unreasonably withheld. Within five (5) business days of receipt of the United States' written approval to MedStar Health, MedStar Health will publish the Public-Facing Policy on all consumer-facing MedStar Health webpages or websites containing visitor policies for each of its hospitals and rehabilitation centers.

b.  <u>Internal Policy</u>.  MedStar Health shall update its internal policy regarding Support Persons (Internal Policy) to carry out the Public-Facing Policy of the immediately preceding subparagraph. The Internal Policy shall apply to all MedStar Health-affiliated individuals for whom it is reasonably foreseeable that they have or likely could have responsibility for determining when a Support Person may or may not accompany a patient (MedStar Health-Affiliated Individuals).[2]  The Internal Policy shall require that MedStar Health-Affiliated Individuals not base decisions regarding whether or not a Support Person is needed solely on whether the prospective patient is able to answer basic clinical questions (e.g., ability to state name and other basic information). Rather, MedStar Health-Affiliated Individuals shall consider other information that may establish the need for a Support Person, if provided to them at that time and/or readily available and

---

[2] MedStar Health has provided to the United States a list of all job titles of MedStar-Affiliated Individuals as defined herein. This list includes regular clinical staff (including nurses and doctors) and non-clinical staff who interface with the public at each of its hospitals and rehabilitation centers. However, to the extent that MedStar Health later determines that this list needs to be supplemented with additional titles of MedStar-Affiliated Individuals, MedStar Health shall ensure that such person(s) are trained as required in this Decree.

consistent with the urgency of the treatment being provided (e.g., information that a person cannot fully participate in their medical care and/or medical decision-making in the clinical setting due to a disability; documentation from prior charting of medical history, such as notations of dementia; or documentation and/or other information provided by the patient or the individual seeking to accompany the patient, etc.).  Further, where a request for a Support Person is made, such request shall not be denied solely based on the requestor's failure to use "key words" or "magic language" (such as specifically referencing the term "Support Person").  Within thirty (30) days of the Effective Date of this Decree, MedStar Health will provide the draft Internal Policy to the United States for review and approval, which will not be unreasonably withheld.  Within ten (10) days of receipt of the United States' approval, MedStar Health will distribute the Internal Policy to all MedStar Health-Affiliated Individuals via email and by all other channels normally used for distribution of policy changes.

c. <u>Notice of Nondiscrimination</u>.  Within ten (10) business days of the Effective Date, MedStar Health shall add text to its existing Notice of Nondiscrimination (currently located at [www.medstarhealth.org/notice-of-nondiscrimination](http://www.medstarhealth.org/notice-of-nondiscrimination)), noting that complaints regarding disability-related issues may be made to the United States Department of Justice, Civil Rights Division, Disability Rights Section, by visiting [https://www.ada.gov/file-a-complaint/](https://www.ada.gov/file-a-complaint/).

12. <u>ADA Training</u>.  Training (ADA Training) shall be provided pursuant to the following requirements:

a. <u>Timing and Personnel Scope</u>.  Within ninety (90) days after the Unites States'

7

approval of the ADA Training curriculum referenced in Paragraph 12(c), and at least once annually thereafter, MedStar Health shall provide ADA Training to all MedStar Health-Affiliated Individuals.  For MedStar Health-Affiliated Individuals who did not receive training within the designated time frame required under this Decree (for instance, because they were on leave or because they began their affiliation with MedStar Health subsequent to the last training date), MedStar Health shall require those individuals to take the ADA Training within ninety (90) days after the individual's start date or return from leave.

b. <u>Content</u>.  The ADA Training shall include an overview of Title III of the ADA and its application to and importance in healthcare settings; an explanation of the genesis of this Decree, as described in the Background section of this Decree; training on examples of disabilities that may limit the ability of individuals who need assistance with processing, comprehension, and communication to equally access medical care without the assistance of a Support Person; detailed instruction on the revised and approved Public-Facing Policy and Internal Policy; review of hospital reporting structures for MedStar Health-Affiliated Individuals' receipt and the appropriate channeling of complaints regarding requests for Support Persons and the channels for MedStar Health-Affiliated Individuals to contact MedStar Health administration with Support Person-related inquiries. During the ADA Training, MedStar Health will provide an email address for attendees to ask questions in writing after the conclusion of the training session, and responses to these inquiries will be provided within ten (10) business days by an individual(s) who understands the Internal Policy and/or has substantive legal

knowledge of Title III of the ADA and the provisions of this Decree.  The ADA

Training must include questions to assist in ensuring that each attendee

understands the content, with an individual requirement of 80 percent accuracy on

a minimum of ten (10) questions or the person will be required to re-answer the

questions until they reach at least a minimum score of 80 percent.

c.   <u>Curriculum Approval</u>.  MedStar Health shall send to the United States the

proposed curriculum for the ADA Training (including the questions to be posed to

attendees), within thirty (30) days after the Effective Date.  The ADA Training

curriculum will be subject to approval by the United States, which will not be

unreasonably withheld.  If the United States does not approve the ADA Training

curriculum, it will provide comments and edits to guide MedStar Health's

revisions. The Parties will work cooperatively to produce a final ADA Training

curriculum that the United States approves.

d.   <u>Training Documentation</u>.  MedStar Health will maintain a system of tracking

those who have not completed the ADA Training pursuant to the timetables

required by this Decree.  Pursuant to its Recordkeeping and Reporting obligations

under this Decree, MedStar Health will report to the United States the number of

MedStar Health-Affiliated Individuals who have not completed the ADA Training

and provide assurances that these individuals will be subject to discipline if they

do not complete the training.  MedStar Health will provide the answers to written

questions posed by ADA Training attendees regarding training content, under the

next-due report unless its next report is due to the United States in fewer than

thirty (30) days, in which case this information will be included on the next due

9

report.

13.   <u>Monetary Relief</u>.  MedStar Health agrees to pay a total of four hundred forty

thousand dollars and zero cents ($440,000) into a Qualified Settlement Fund[3] (Fund) to be

distributed to DOJ-Designated Individuals and Additional Aggrieved Persons, who are

individuals who the Parties have agreed are eligible for compensation pursuant to this Decree

and have met all requirements for receiving payment as further defined below (collectively

known as MedStar Health Payees).  MedStar Health will engage an independent Settlement

Administrator (subject to approval by counsel for the United States, not to be unreasonably

withheld) to perform all functions related to payment of monetary relief as described in this

Decree (Administrator).[4]  Each potential MedStar Health Payee will receive a packet containing

information about their eligibility to receive payment under this Consent Decree (Exhibit 1

---

[3] "Qualified Settlement Fund" is defined to have the meaning set forth in 26 C.F.R. § 1.468B-1, to the extent applicable to the terms of this Decree.

[4] Therefore, where any action regarding payment of monetary relief (e.g., notification, follow up, payment to MedStar Health Payees) designates that "MedStar" will perform that duty, the United States recognizes that MedStar Health will contract with the Administrator to execute that function.  Where this Decree requires the Administrator to perform a function, MedStar Health agrees that it remains MedStar Health's responsibility to ensure that task is completed pursuant to this Decree, which is entered into solely between the United States and MedStar Health.  The Administrator's contract will require the Administrator to: a) comply with the provisions of this Decree as applicable to the Administrator, b) work cooperatively with the United States in the conduct of the Administrator's activities, including reporting regularly to and providing all requested information to the United States as specified in this Decree, c) internally maintain the confidentiality of personally identifiable information received in connection with its duties under the Decree; d) establish (within ten (10) days of the Effective Date of this Decree) and maintain an accessible website providing information about this Decree, including Required Documents and online means to submit those, where applicable (Settlement Website); and e) establish cost-free means for individuals to contact the Administrator, i.e., both email and a toll-free number (and accompanying TTY text telephone number).  For purposes of this entire Decree (not solely as applicable to the Administrator), website content will be considered "accessible" if it complies with the Web Content Accessibility Guidelines 2.1, Level AA (June 5, 2018), published by the World Wide Web Consortium (WCAG 2.1 AA). As used in this Decree, WCAG 2.1 AA incorporates the Level A and Level AA Success Criteria.

hereto), a Release of Claims Document (Exhibit 2 hereto), and an IRS Form W-9 (collectively, the MedStar Health Payee Packet). In order to be paid under this Decree, each potential MedStar Health Payee (or a person legally designated to act on his or her behalf or on his or her estate's behalf) must return the executed, fully completed Release of Claims Document and IRS Form W-9 provided to them (collectively, Required Documentation). There will be no reversion to MedStar Health of any of the $440,000; rather, the full Fund will be paid to MedStar Health Payees. MedStar Health will not assert that any MedStar Health Payee is ineligible to be paid under this Decree (for instance, as a result of previously releasing MedStar Health from disability-related claims).

    a. <u>DOJ-Designated Individuals</u>. DOJ-Designated Individuals are individuals and/or their Support Persons (or the estates of either, in the event that they are now deceased) who the United States alleges are persons aggrieved by MedStar Health's application of its visitor policies and who have returned Required Documentation (DOJ-Designated Individuals). The amounts paid to these individuals will collectively be no more than $200,000 from the Fund.

    b. <u>Additional Aggrieved Persons</u>. Additional Aggrieved Persons are individuals (or their estates, in the event that they are now deceased) that the Parties have agreed are compensable pursuant to this Decree (Additional Aggrieved Persons). The final amount paid to these individuals shall be determined by how many Additional Aggrieved Persons are deemed MedStar Health Payees, but will be no less than $240,000 from the Fund divided pro rata by the number of Additional Aggrieved Persons who are MedStar Health Payees. The United States retains the ability to designate or re-designate any MedStar Health Payee as a DOJ-

Designated Person rather than as an Additional Aggrieved Person at any time up to ten (10) days prior to the Check Mailing Date (as defined below), at the United States' sole discretion.  The United States also retains the right to re-direct funds that were initially earmarked for DOJ-Designated Individuals (should any of the DOJ-Designated Individuals decide not to participate) to Additional Aggrieved Persons.

c.   Procedure for Payment of MedStar Health Payees.

1. All notifications required to be sent to potential MedStar Health Payees (and MedStar Health Payees) pursuant to this Decree shall issue as follows:

i.   All written communications sent to potential MedStar Health Payees required to be mailed under this Decree will issue via first class U.S. Mail and will prominently bear the MedStar Health logo, as it appears on www.medstarhealth.org (either on an envelope or on a postcard).

ii.  All email communications shall be sent to email address(es), if available, associated with the relevant individual from the current MedStar Health records system or provided to MedStar Health by the United States, unless the Administrator receives different email address(es) through the return of Required Documentation or other notification by a potential MedStar Health Payee.  Following the return of Required Documentation, all communications required to be sent via email will be directed solely to the email address(es)

12

provided by the potential MedStar Health Payee in Required

Documentation or subsequently provided in writing by a potential

MedStar Health Payee to the Administrator, as long as such

updated email address(es) are provided at least two days prior to

the communication.

2. Within ten (10) business days of the Effective Date, the United States will

provide in writing to MedStar Health the names of the initial DOJ-

Designated Individuals, along with minimum payment information for

each, for insertion into the Release of Claims Document (Exhibit 2

hereto).  Within seventeen (17) business days of the Effective Date,

MedStar Health will provide the Administrator with the full list of

potential MedStar Health Payees.

3. Within twenty-five (25) business days of the Effective Date, the

Administrator shall provide the Parties a list of all potential MedStar

Health Payees with the associated minimum amounts payable to each

(Notification List), for use in the portion of Exhibit 1 that is specific to

each potential MedStar Health Payee, and the Parties will confer within

three (3) business days and provide the Administrator with any changes

necessary to create the final Notification List (Final Notification List).

For purposes of the Administrator's calculations for the Notification List

and Final Notification List, the Administrator shall divide the $240,000

sum by the number of Additional Aggrieved Persons being notified in

order to establish the minimum potential payment amount.  Also, within

13

twenty-five (25) business days of the Effective Date, the Administrator
will provide the Parties with Exhibit 1 hereto (with all highlighted
placeholders filled in other than potential MedStar Health Payee names
and minimum amounts payable to each) for the United States' review.

4. Within fifteen (15) business days of its creation of the Final Notification
List, the Administrator will transmit the MedStar Health Payee Packet
(with the potential MedStar Health Payee names, minimum amounts
payable to each pursuant to the Final Notification List, and a seventy (70)
day deadline filled in as a date certain on Exhibit 1, i.e., stating month,
day, and year) (Claims Deadline).  This information will be transmitted to
all potential MedStar Health Payees via first class U.S. Mail and also by
email (Initial Mailing).

5. Thirty-five (35) days from the date of the Initial Mailing, the
Administrator will issue a reminder postcard to all potential MedStar
Health Payees who have not returned fully completed Required
Documentation (Reminder Postcard).  The Reminder Postcard will clearly
state what information is needed to complete the Required Documentation
and that the information should be returned by the Claims Deadline
(clearly stating the month, day, and year of the Claims Deadline).

6. Eighty (80) days after the date of the Initial Mailing, the Administrator
will issue a reminder postcard to all remaining potential MedStar Health
Payees who have not returned fully completed Required Documentation
(Final Reminder Postcard) and will also reach out to them via email and

telephone where that information has been provided to the Administrator by the potential MedStar Health Payee.  The Final Reminder Postcard will provide Administrator's full contact information, clearly state what information is needed to complete the Required Documentation and will indicate that this is the final chance to return the Required Documentation in order to be paid under this Decree.  The Final Reminder Postcard and the content of email and phone outreach pursuant to this Paragraph will make clear that potential MedStar Health Payees have an additional twenty (20) days from the date the Final Reminder Postcard was mailed (the Administrator will provide a date certain in the postcard and in email and phone communications) (Extended Claims Deadline) to return any missing information, after which the potential MedStar Health Payee will no longer be eligible to be a MedStar Health Payee.

7. Within fifteen (15) days after the Extended Claims Deadline, the Administrator will report to the Parties on the final pool of MedStar Health Payees.  The Administrator will inform the Parties of any potential MedStar Health Payees who returned documentation following the Extended Claims Deadline or who submitted partial Required Documents (Late or Incomplete Claimants).  The Parties reserve the right to jointly deem Late or Incomplete Claimants as MedStar Health Payees.  The United States will inform MedStar Health of any additional individuals (from the grouping of Additional Aggrieved Persons) that it wishes to designate as DOJ-Designated Individuals (with associated payment

15

amounts) as well as any upward adjustments to payment amounts for individuals already deemed DOJ-Designated Individuals.  This information will be used by the Administrator to create a final payout list to be used for its issuance of checks (Final Payout List).

8. The United States retains the ability to designate or re-designate any MedStar Health Payee as a DOJ-Designated Person rather than as an Additional Aggrieved Person at any time up to ten (10) days after the creation of the Final Payout List.

9. Within twenty-five (25) days of its creation of the Final Payout List, the Administrator shall issue and mail checks to each MedStar Health Payee in accordance with the Final Payout List (Check Mailing Date).  These checks will have a one hundred twenty (120) day expiration date for cashing.

14. <u>Uncashed Checks</u>.  Sixty (60) days after the Check Mailing Date, the Administrator will notify each MedStar Health Payee whose check is uncashed that their check has not been cashed, state the date when the check expires, and provide contact information should they need the check to be re-issued.[5]  This notice will issue by reminder postcard (Uncashed Check Reminder Postcard) and phone call at the contact information provided to the Administrator by the MedStar Health Payees.

15. <u>Expired Checks</u>.  Should a check expire prior to any required return to the state of unclaimed funds as required by state law, the MedStar Health Payee may request from the

---

[5] A check will not be re-issued if the Administrator cannot stop payment (e.g., because the check was already negotiated or in process).

Administrator, and will receive, a re-issued check, subject to the provisions of Footnote 5.

16.    <u>Taxes, Attorneys' Fees, and Administrative Fees</u>.  MedStar Health Payees will be solely responsible for any applicable federal, state, and local taxes, as well as for any attorneys' fees that a MedStar Health Payee chooses to individually incur related to this Decree.  MedStar Health will be solely responsible for paying any administrative fees and/or costs as well as any applicable federal, state, and local taxes MedStar Health owes (i.e., MedStar Health's payments will not be deducted from the Fund).

17.    <u>Website Posting Regarding Resolution</u>.  Within ten (10) days of the Effective Date, MedStar Health will post text on its main webpage (www.medstarhealth.org) stating "Americans with Disabilities Act Resolution with U.S. Department of Justice".  This shall appear prominently below the current "Find Care Now" and above the current "Specialty Care Services" areas.  The posted text shall hyperlink to the following message:  "MedStar Health has entered into an agreement with the U.S. Department of Justice (DOJ) to resolve an investigation brought under the Americans with Disabilities Act (ADA).  This resolves alleged ADA violations involving the failure to make certain exceptions to MedStar Health's visitor restrictions related to COVID-19.  DOJ alleges that MedStar Health did not allow the presence of a support person (such as a family member, companion, or aide) to accompany individuals with certain disabilities who could not equally access MedStar Health's care without that support.  MedStar Health denies these violations but has agreed to resolve this matter with the DOJ.  If you are an individual who is entitled to be paid under this agreement, you will receive written notification and instructions from MedStar Health's third party Settlement Administrator."  All posting pursuant to this Paragraph shall be in accessible format (as defined in Footnote 4 of this Decree) and shall remain posted in the locations designated in this Paragraph for six months from the date

of the initial posting.

18.    <u>Recordkeeping and Reporting</u>.

a.    <u>Administrator Reports</u>.  MedStar Health will contract with its Administrator to require the Administrator to report the following information to the Parties on a bi-weekly basis (starting two weeks after the Initial Mailing):

1. Potential MedStar Health Payees who received notice by mail and/or by email;

2. the status of each potential MedStar Health Payee's return of Required Documentation (separating columns for each required document);

3. any undeliverable/returned document, the performance of a skip-trace search by the Administrator, and status/date of new mailing.

4. any follow up on missing documents performed by the Administrator (e.g., Reminder Postcards, Final Reminder Postcards, and Uncashed Check Reminder Postcards); and

5. issuance of payment to MedStar Health Payees and the status of check cashing.

b.    <u>Regular Reports</u>.  MedStar Health shall report via email to the United States on its compliance with its obligations under this Decree starting one hundred twenty (120) days after the Effective Date, and thereafter semi-annually for the Term of the Decree (MedStar Health Regular Reports).  The MedStar Health Regular Reports will detail MedStar Health's compliance with this Decree, including efforts undertaken pursuant to this Decree on which MedStar Health has not previously reported.  Each MedStar Health Regular Report must include all

questions regarding the ADA Training that were submitted to MedStar Health and the answers provided, as well as all information regarding training status pursuant to Paragraph 12(d), above.  The Regular Reports shall also include complaints made to MedStar Health regarding requests for Support Persons since MedStar Health's prior Regular Report, together with an explanation of each action MedStar Health has taken in response to each such complaint (or if no action is taken in response to a particular complaint, MedStar Health shall include an explanation of why no action was taken).  MedStar Health shall also respond within five (5) business days (unless an alternate timeline is specified) to any other inquiries made at any time by the United States in writing (by email) to MedStar Health's outside counsel in this matter regarding compliance with this Decree.

## OTHER PROVISIONS

19.     <u>Effective Date</u>.  This Decree will become effective as of the date that is entered by the Court.

20.     <u>Term</u>.  The duration of this Decree will be three (3) years from the Effective Date.

21.     <u>Delivery of Information to the Parties</u>.  All reports and materials required pursuant to this Decree to be delivered to the United States shall be delivered to the undersigned counsel via electronic mail at anne.langford@usdoj.gov and sarah.marquardt@usdoj.gov, and/or other persons subsequently specified by the United States.  Unless otherwise specified in this Decree, all communications from the United States should be directed via electronic mail to annemarie.estevez@morganlewis.com, beth.joseph@morganlewis.com, and kerry.m.richard@medstar.net and/or any other persons subsequently specified by MedStar

Health or its counsel.  Any party may update mailing or electronic addresses to all other parties without requiring any changes to this Consent Decree.

22.     Enforcement and Dispute Resolution.  The United States may review MedStar Health's compliance with this Decree at any time and shall have the right to request information or a copy of any documents that are necessary to monitor MedStar Health's compliance with this Decree.  MedStar Health shall provide the requested information or documents within five (5) business days.

    a.  Notification in Writing.  Counsel for the United States shall promptly notify counsel for MedStar Health in writing if the United States develops concerns regarding possible non-compliance with the terms of this Decree, or otherwise disagrees with MedStar Health regarding the terms, processes, or obligations set forth in this Decree. Counsel for any Party may also notify counsel for another Party that they wish to meet and confer in good faith regarding any aspect of this Decree.

    b.  Meet and Confer.  Unless otherwise agreed to by the Parties in writing, the Parties agree to meet and confer in good faith (such meeting may occur virtually) within fifteen (15) business days after receipt of a written notification pursuant to subparagraph (a) of this Paragraph or as otherwise agreed to by the Parties.

    c.  Application for Further Relief.  If the meeting required by subparagraph (b) of this Paragraph does not lead to a resolution satisfactory to the United States, then, with at least five (5) days' written notice to MedStar Health pursuant to Paragraph 21, including by electronic mail, the United States may seek enforcement of this Decree by the Court.  In such an event, the United States may seek to have this

Court impose any remedy authorized by law or equity to address Defendant's violation or failure to perform.

23.     Non-Waiver.  Failure by the United States to enforce any provision or deadline of this Decree shall not be construed as a waiver of its right to enforce any provision or deadline of the Decree.

24.     Titles.  Titles and other headings contained in this Decree are included only for ease of reference and shall have no substantive effect.

25.     Timelines.  Any timelines for performance fixed by, or pursuant to, this Decree (except for the Term) may be modified by mutual written agreement of the Parties.

26.     Severability.  If any term of this Decree is determined by any court to be unenforceable, the other terms of this Decree shall nonetheless remain in full force and effect.

27.     Binding Nature of Decree.  This Decree shall be binding upon MedStar Health and its successors.  MedStar Health acknowledges that regardless of whether it relies on agents, contractors, or employees, MedStar Health remains responsible for compliance with this Decree.

28.     Authority.  The signatories represent that they have the authority to bind the respective parties identified below to the terms of this Decree, and the United States and MedStar Health each represent that no other party is a necessary signatory to this Decree in order to carry out its obligations.

29.     Entire Decree.  This Decree constitutes the entire Decree between the Parties on the matters raised herein and no other statement or promise, written or oral, made by any party or agents of any party, that is not contained in this written Decree (other than adjustments to Timelines pursuant to Paragraph 25) shall be enforceable.

30.     Consideration.  In consideration of the terms of this Decree as set forth above, the

United States shall close its investigation of DJ No. 202-35-405/USAO No. 2021V00369, and agrees to refrain from filing a new civil suit under Title III as a result of the investigation leading to this Decree and to refrain from seeking other judicial relief as a result of the investigation leading to this Decree except as provided in this Paragraph and in Paragraphs 22 (Enforcement and Dispute Resolution) and 31 (Other Violations).  DOJ does not intend to enforce Title III against MedStar Health based on MedStar Health's application of Visitor Policies that resulted in the exclusion of Support Persons for any incidents up to the Effective Date.

31.     <u>Other Violations</u>.  This Decree does not remedy any other potential violations of the ADA or any other law that is not specifically addressed herein, nor does it affect MedStar Health's continuing responsibility to comply with the ADA.

32.     <u>Retention of Jurisdiction</u>.  For the duration of the decree, the Court will retain jurisdiction over this Decree for the purposes of implementing the relief provided herein, and resolving any disputes or entering any orders that may be necessary to implement the relief provided herein.

By their signatures below, the Parties respectfully consent to the execution of all aspects of this Decree.

**FOR THE UNITED STATES OF AMERICA:**

DATED:  <u>1/30/2024</u>

EREK L. BARRON
United States Attorney

<u>/s/ Sarah Marquardt</u>
Sarah Marquardt  (No. 17429)
Assistant United States Attorney
District of Maryland
36 S. Charles Street, 4th Floor
Baltimore, MD 21201
Telephone:  410-209-4801
Email:  sarah.marquardt@usdoj.gov

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division

REBECCA B. BOND
Chief

<u>/s/ Anne E. Langford</u>
AMANDA MAISELS
Deputy Chief
ANNE E. LANGFORD
Trial Attorney
Disability Rights Section
Civil Rights Division
United States Department of Justice
4 Constitution Square
150 M Street, NE
Washington, DC  20530
Telephone: 202-616-2727
Email:  anne.langford@usdoj.gov

*Counsel for the United States of America*

**FOR MEDSTAR HEALTH:**

DATED: _____1 - 29 - 24_____

KENNETH A. SAMET
President and Chief Executive Officer
MedStar Health, Inc.
10980 Grantchester Way
Columbia, MD 21044

It is so ORDERED this 5th day of February, 2024

/s/
_____
Julie R. Rubin
United States District Judge

# EXHIBIT 1

[MedStar Logo]                                      [Settlement Administrator's Logo]

Re:  MedStar Health Settlement with U.S. Department of Justice – Compensation
Available to You Due to Experience at MedStar Health

Dear Former MedStar Health Hospital Patient or Support Person:

You are receiving this communication because within the past several years you received care at
a MedStar Health hospital or because you (or your family member) reached out to MedStar
Health about a concern regarding an experience at one of MedStar Health's locations.  MedStar
Health has entered into an agreement with the U.S. Department of Justice (DOJ) under the
Americans with Disabilities Act (ADA) involving MedStar Health's restrictions on "visitors"
related to COVID-19.  DOJ alleges that at times MedStar Health did not allow the presence of a
support person (such as a family member, companion, or aide) to accompany individuals with
certain disabilities who could not equally access MedStar Health's care without that support.
MedStar Health denies these violations but has agreed to settle this matter with the DOJ.

**MedStar Health has agreed to compensate you and has hired our company to assist in the
distribution of funds.  You are entitled to a minimum amount of $[AMOUNT TO BE
INSERTED PRIOR TO TRANSMISSION BASED ON AMOUNTS REQUIRED FOR
INDIVIDUAL DOJ-DESIGNATED INDIVIDUALS AND FOR ADDITIONAL AGGRIEVED
PERSONS].  To receive payment under this Agreement, you must fully complete and
return two documents that are included with this mailing:**
   1) **a Release of Claims Form and**
   2) **an IRS Form W-9.**
**These must be returned at [all means for return of documents to be inserted by Settlement
Administrator].  Please return these by [Settlement Administrator to insert date that is 70
days from date of transmission of this letter:  Administrator to insert month, day and year
in this placeholder].**

We realize that you have not heard of this settlement before, and we want to provide you with
several ways that you can verify that this communication is legitimate.  Information about this
agreement is available on the landing page of MedStar Health's website, www.medstarhealth.org
(below the "Find Care Now" section and above the "Specialty Care Services" section) and at
[Settlement Administrator to insert direct URL for information that is linked from
www.medstarhealth.org pursuant to the requirements of Consent Decree Paragraph 17].  DOJ's
website has information about the agreement at [insert DOJ hyperlink to Press Release here].
You may also contact the DOJ's ADA Information Line to confirm the legitimacy of this
agreement at 800-514-0301 (voice) or 1-833-610-1264 (TTY) (Monday, Tuesday, Wednesday,
Friday: 9:30 a.m. to 12:00 p.m. and 3:00-5:30 p.m. ET or Thursday: 2:30 p.m. to 5:30 p.m. ET).

All questions about return of forms and payment, however, must be directed to [Settlement
Administrator's name] at [insert all means of contact and Settlement Administrator URL].  We

look forward to assisting you in this matter.

Sincerely,

[Settlement Administrator Contact Name]

Enclosures

# EXHIBIT 2

## <u>RELEASE OF CLAIMS</u>

For and in consideration of the payment offered to me by MedStar Health, Inc. ("MedStar Health") pursuant to the Consent Decree between the United States of America and MedStar Health arising out of Department of Justice Investigation No. 202-35-405/ USAO No. 2021V00369 (the "Decree"):

I, _____, on behalf of myself and on behalf of my grantees, agents, representatives, heirs, devisees, trustees, assigns, assignors, (the "Releasee"), hereby release and forever discharge MedStar Health, its parents, subsidiaries and affiliates, and each of their current, past, and future officials, directors, officers, employees, insurers, predecessors, successors, assigns, and agents, of and from any Americans with Disabilities Act-related legal and/or equitable claims, and claims under any other federal, state, or local law or common law, arising out of the facts identified or allegations made in the Complaint related to Department of Justice Investigation No. 202-35-405/ USAO No. 2021V00369.  Excluded from this Release are any rights and claims that cannot be waived by law.

I acknowledge and agree that I am solely responsible for payment of any applicable federal, state, or local taxes and/or associated expenses due as a result of the settlement payment I receive pursuant to this Decree.  This Release constitutes the entire agreement between myself and MedStar Health, without exception or exclusion.

I acknowledge that a copy of the Complaint (available on the Department of Justice's website at [insert DOJ hyperlink here]) and Consent Decree (available on the Department of Justice's website at [insert DOJ hyperlink here]) have been made available to me.  By signing this Release, I acknowledge that I have been provided the opportunity to review the Complaint, Consent Decree, and this Release with an attorney of my choosing.

I HAVE READ THIS RELEASE AND UNDERSTAND THE CONTENTS THEREOF AND I EXECUTE THIS RELEASE OF MY OWN FREE ACT AND DEED.

Date:_____

_____
Signature of Releasee (or Person Legally
Acting on Releasee's Behalf)


Full Mailing Address:

_____
_____
_____

Alternative and/or future Mailing Address, if any (and date after which we should use this address to mail you information or payment):        Date: _____

_____
_____
_____

Email:_____

Phone(s):_____


**Please return this two-page form to [**Settlement Administrator name] at:  [all modes of return to be inserted by Settlement Administrator]